COURT OF APPEALS
DECISION
DATED AND FILED

August 4, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP654-CR**

Cir. Ct. No. **2014CF81**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

MICHAEL L. PARKS,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Chippewa County:  STEVEN R. CRAY, Judge.  *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Michael Parks appeals a judgment, entered upon a jury's verdicts, convicting him of three counts of first-degree sexual assault.  He

also appeals an order denying him postconviction relief. Parks asserts the circuit court erroneously exercised its discretion by excluding evidence of: (1) specific instances where the victim, Sara,[1] stole money from her family members to support her drug addiction; and (2) a prior allegation of sexual assault that Sara made. Parks also asserts that the exclusion of this evidence violated his constitutional rights to present a complete defense, to confront his accuser, and to a fair trial. Further, he argues that his trial counsel performed ineffectively by not raising certain arguments he contends would have supported the admission of the excluded evidence, and also that he is entitled to a new trial in the interest of justice. We reject each of Parks' arguments and affirm.

## BACKGROUND

¶2      On March 10, 2014, the State charged Parks with four counts of first-degree sexual assault.[2] The charges arose from Sara's allegation that, in September 2013, Parks and another man entered her residence, beat her, and then took turns sexually assaulting her. Sara told police that Parks was her heroin dealer and that before assaulting her, he told her she owed him $3000 and she would "regret not paying."

¶3      Prior to trial, Parks moved to admit evidence of what he claimed was a prior untruthful allegation of sexual assault made by Sara, pursuant to WIS.

---

[1] Pursuant to the policy underlying WIS. STAT. RULE 809.86 (2017-18), we refer to the victim using a pseudonym. All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2] The specific counts were: (1) first-degree sexual assault by use of a dangerous weapon, contrary to WIS. STAT. § 940.225(1)(b); (2) first-degree sexual assault aided by others, contrary to WIS. STAT. § 940.225(1)(c); (3) first-degree sexual assault by use of a dangerous weapon as a party to a crime; and (4) first-degree sexual assault aided by others, as a party to a crime.

2

STAT. § 972.11(2)(b)3. According to Parks' motion, while in custody on an unrelated matter in March 2014, Sara informed police that her former boyfriend had "drugged and raped" her. The investigator who questioned Sara about this allegation wrote in her report that she "questioned the validity" of Sara's claim. Moreover, she wrote that she "found numerous inconsistencies" with Sara's statement. Accordingly, no charges were ever filed against Sara's former boyfriend.

¶4 Parks also filed a motion in limine seeking to admit evidence of three instances, occurring in March and April 2014, in which Sara had either forged checks or stolen credit cards from her family members. Parks argued testimony concerning each of these instances was "admissible pursuant to WIS. STAT. §§ 904.04[1](b) and 904.05(2) as [Sara] has a specific trait of dishonesty which is an essential element to Mr. Parks' defense."

¶5 The circuit court denied both of Parks' motions. Parks then moved for reconsideration of the court's decision regarding the admissibility of the evidence related to the instances of Sara's deceitful conduct.[3] The court denied this motion.

¶6 At trial, Sara testified that, during the fall of 2013, she purchased heroin and opioid pills from Parks. She stated that she did not always have money

---

[3] At the hearing on the motion for reconsideration, Parks' counsel identified a fourth instance of Sara stealing from her family members. Specifically, counsel asserted that in January 2014, Sara stole checks from her father and then forged his signature on the checks. Sara initially denied this conduct to both her father and police; however, she ultimately confessed to it.

We will refer to the four instances in which Sara stole from her family members collectively as the "instances of Sara's deceitful conduct" for the remainder of this opinion.

to pay for these drugs and, as a result, Parks would occasionally "front" her money for a purchase.

¶7     Sara testified that on the day in question,[4] Parks and a male individual she did not know arrived at her house. She stated that Parks and the other man entered her bedroom without permission, and that Parks then "told me that I was going to pay him." After Sara told him she did not have any money, one of the two men (Sara could not identify which one) began to kick her and one of them hit her on the back of the head with a gun. Sara fell onto her bed, "felt [her] clothes being ripped off," and both men then sexually assaulted her.

¶8     Sara stated that Parks made it clear to her that she was being assaulted because she owed him money. In addition, Sara said that Parks told her immediately after the assault that she still owed him money. She also testified that Parks told her on a later date that if she did not pay her debts he would assault her again.

¶9     Sara testified that because she still "owed [Parks] money," she told her father about the assault and her drug debt approximately one week after the attack occurred. She acknowledged that she did not report the assault to police until January 2014, however, because she was "scared for [her] life."

¶10     On cross-examination, Sara acknowledged that while participating in counseling during her drug rehabilitation program, she had admitted that

_____

[4] Sara testified that she could not recall the exact date of her assault, but she believed it occurred before September 13, 2013—the date on which she began a drug rehabilitation program.

"sometimes honesty is hard." She also admitted that she had stolen money in the past to pay for drugs.

¶11 After defense counsel elicited this testimony from Sara, the prosecutor requested to be heard by the circuit court outside the presence of the jury. The prosecutor subsequently informed the court that it had "a problem with the fact that the last two questions … asked are specific things that we dealt with by pretrial motion that [defense counsel] wasn't supposed to get into." The court agreed with the State, and it "admonished [defense counsel] not to proceed in that way." When the court asked whether the prosecutor was requesting Sara's responses be struck or otherwise addressed with the jury, however, the prosecutor stated he preferred the "court just move on with, I guess, the understanding, hopefully, that we all have now is that honesty issues, prior bad acts, whatever form they may come in, are covered under the court's pretrial ruling."

¶12 Sara's father testified that she called him and "told me she was raped" because "she owed somebody money." He stated this call occurred in early September 2013, and it was "probably a week" after the assault occurred. After the call, he went to see Sara and observed "bruises on her knees."

¶13 Sara's father denied that she asked him for any money when she first told him she was raped. He stated, however, that she "later" came to him and asked for money because "she was afraid it was going to happen again." Consequently, he gave her "a couple hundred dollars" and drove her to Eau Claire, where he saw her pay a "black man" the money.[5]

---

[5] Parks is black. Sara alleged that the unidentified male who assaulted her with Parks was also black.

¶14    Parks testified in his own defense. He admitted that he sold heroin to Sara, although he denied that she ever owed him a substantial debt. He also denied sexually assaulting Sara and asserted he did not ever resort to violence when he needed to collect a drug debt.

¶15    Parks also called two of Sara's friends, as well as one of her former boyfriends.[6] Each of these three witnesses testified that Sara told them she had lied about being sexually assaulted by Parks.

¶16    After the defense rested, the State recalled Sara. She testified that if she ever told anyone the sexual assault did not actually occur, she did so "to end a conversation I didn't want to talk about."

¶17    In its closing argument, the State told the jury this was a "he said/she said case" and argued that Sara was a more credible witness than Parks. Parks' counsel informed the jury she agreed with the State that this was a "he said/she said" case, but she argued that Sara was "not a credible witness." Counsel explained that Sara's testimony contained numerous inconsistencies, and she further argued that "[t]here's a motive for [Sara] to make this up. She needed money to buy drugs. She told people that this happened, and she received money to buy drugs."

¶18    The jury acquitted Parks on the first-degree sexual assault by use of a dangerous weapon count and found him guilty of the remaining three counts of first-degree sexual assault. Parks subsequently filed a postconviction motion for a

---

[6] We note that this former boyfriend is not the same boyfriend whom Sara alleged "drugged and raped" her.

new trial. As relevant here, Parks' postconviction motion challenged the circuit court's denial of his motions to admit evidence of Sara's prior untruthful allegation of sexual assault and her instances of deceitful conduct. Parks also asserted that his trial counsel provided ineffective assistance by failing to argue that: (1) the instances of Sara's deceitful conduct and her prior untruthful allegation of sexual assault were admissible "to demonstrate a motive for [Sara] to lie"; and (2) evidence of the instances of Sara's deceitful conduct should have been admitted under the curative admissibility doctrine, which generally allows for one party to introduce otherwise inadmissible evidence in response to the opposing party's either accidental or purposeful use of a piece of evidence that would normally be inadmissible.

¶19 Following a *Machner*[7] hearing, the circuit court denied Parks' postconviction motion. This appeal follows.

## DISCUSSION

### I. Evidentiary rulings

¶20 Under Wisconsin law, whether to admit evidence is a discretionary decision for the circuit court. *State v. Franklin*, 2004 WI 38, ¶6, 270 Wis. 2d 271, 677 N.W.2d 276. We review a circuit court's discretionary decisions under a deferential standard. *State v. Echols*, 2013 WI App 58, ¶14, 348 Wis. 2d 81, 831 N.W.2d 768. Accordingly, we will not reverse a circuit court's decision to exclude evidence if the court examined the relevant facts, applied a proper

---

[7] *See State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

standard of law, used a demonstrated rational process, and reached a conclusion that a reasonable judge could reach. **Id.**

### A. Instances of Sara's deceitful conduct

¶21    Parks first contends that the circuit court erroneously exercised its discretion by excluding evidence concerning the instances of Sara's deceitful conduct. He reasons that "[t]hese instances of deceitful conduct were admissible under WIS. STAT. §§ 904.04(1)(b), 904.05(2), 904.04(2)(a) or 906.08" and, further, that the evidence was "extremely probative, and not outweighed by any danger of unfair prejudice."

¶22    We begin by addressing whether the circuit court erroneously exercised its discretion by declining to admit the instances of Sara's deceitful conduct under WIS. STAT. §§ 904.04(1)(b)[8] and 904.05(2).[9]  "As a general rule,

---

[8]  WISCONSIN STAT. § 904.04(1) provides. in relevant part:

> (1) CHARACTER EVIDENCE GENERALLY.  Evidence of a person's character or a trait of the person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion, except:
>
> ....
>
> (b) *Character of victim*.  Except as provided in [WIS. STAT. §] 972.11(2), evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor.

[9]  WISCONSIN STAT. § 904.05(2) concerns methods of proving character and provides:

(continued)

'[e]vidence of a person's character or a trait of the person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion ....'" ***State v. Jackson***, 2014 WI 4, ¶46, 352 Wis. 2d 249, 841 N.W.2d 791 (citing § 904.04(1)). The exception to this general rule established by § 904.04(1)(b) allows for a criminal defendant to present evidence of a crime victim's "pertinent" character trait. Sec. 904.04(1)(b). Such evidence may include specific instances of conduct, provided that the character trait is an essential element of a defense. Sec. 904.05(2).

¶23 Here, Parks argues the instances of Sara's deceitful conduct were an essential element of his defense because they concerned Sara's "untruthfulness and her motive to falsely accuse him of sexual assault." The former aspect of this argument (i.e., that Sara's character trait of untruthfulness was an essential element of Parks' defense) is foreclosed by ***State v. Evans***, 187 Wis. 2d 66, 522 N.W.2d 554 (Ct. App. 1994).

¶24 In ***Evans***, a defendant charged with sexual assault of a child sought to introduce extrinsic evidence that, in the past, his accuser had made false allegations regarding matters unrelated to the charged crime. ***Id.*** at 75-76. The circuit court rejected that attempt, and we affirmed the court's decision. ***Id.*** at 74. In doing so, we recognized that while the accuser's "character for truthfulness might be relevant to [the defendant's] defense, it was not an essential element of

---

(2) SPECIFIC INSTANCES OF CONDUCT. In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of the person's conduct.

9

his defense." *Id.* at 82. Consequently, we reject Parks' argument that Sara's character trait of untruthfulness was an essential element of his defense.

¶25 As to the latter portion of his argument, Parks argues that the evidence regarding instances of Sara's deceitful conduct "was not critical merely because it established [Sara's] character for untruthfulness; rather, it established [Sara's] motive to lie under a specific set of circumstances"—that is, "when she needs money to further her drug habit." In Parks' view, this additional relevance concerning Sara's "motive to lie" is sufficient to distinguish *Evans* on the basis that *Evans* "dealt solely with character for untruthfulness, not with motive to fabricate evidence."

¶26 We are not persuaded by Parks' attempt to distinguish *Evans*, for two reasons. First, Parks ignores that the threshold requirement for evidence to be admissible under WIS. STAT. § 904.04(1)(b) is that the evidence must concern a "pertinent trait of character." Motive—including a motive to lie—is not a character trait; rather, it is a permissible purpose for which character evidence may be introduced under § 904.04(2)(a). Because the "motive" Parks identifies is derivative of Sara's character trait of untruthfulness—which is not an essential element of Parks' defense under *Evans*—the evidence is not admissible under § 904.04(1)(b).

¶27 Second, Parks' argument that he should have been able to introduce evidence of the instances of Sara's deceitful conduct because Sara has a motive to lie "when she needs money to further her drug habit" is, in our view, indistinguishable from the argument we rejected in *Evans*. Specifically, in *Evans*, we characterized the defendant's argument to be that he should be able to introduce the evidence of the victim's character because "she lied in the past so

10

she has a character trait for lying." *Evans*, 187 Wis. 2d at 81. Thus, *Evans* controls because Parks' argument is, at bottom, that Sara lied in the past to further her drug habit and so she has a character trait for lying to obtain drugs.

¶28 Parks next contends the circuit court should have admitted the instances of Sara's deceitful conduct as other acts evidence of motive under WIS. STAT. § 904.04(2)(a). That statute provides that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith," but "does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

¶29 Courts apply a three-step analysis to determine the admissibility of other acts evidence. *State v. Sullivan*, 216 Wis. 2d 768, 771, 576 N.W.2d 30 (1998). Other acts evidence is properly admitted if: (1) it is offered for a permissible purpose under WIS. STAT. § 904.04(2); (2) it is relevant under the two relevancy requirements found in WIS. STAT. § 904.01; and (3) its probative value is not substantially outweighed by the risk of unfair prejudice under WIS. STAT. § 904.03.[10] *Sullivan*, 216 Wis. 2d at 772-73.

¶30 On appeal, Parks asserts that the instances of Sara's deceitful conduct satisfy the first prong of the *Sullivan* analysis because they would have been offered for the permissible purpose of establishing Sara's motive to fabricate the sexual assault. He explains, consistent with his argument discussed above, that

---

[10] WISCONSIN STAT. § 904.03 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

the instances of Sara's deceitful conduct show that she had a motive to engage "in deceitful conduct in order to obtain money to purchase drugs."

¶31     As an initial matter, the State argues Parks forfeited his WIS. STAT. § 904.04(2)(a) "motive" argument by not raising it until he filed his postconviction motion. Forfeiture is a rule of judicial administration, however, and a reviewing court may therefore disregard a forfeiture and address the merits of an unpreserved issue in an appropriate case. *State ex rel. Universal Processing Servs. of Wis., LLC v. Circuit Court of Milwaukee Cty.*, 2017 WI 26, ¶53, 374 Wis. 2d 26, 892 N.W.2d 267. We decline to apply the forfeiture rule here for two reasons.

¶32     First, Parks did raise his WIS. STAT. § 904.04(2) argument in his postconviction motion. As a result, the circuit court provided an explanation of why it would have declined to admit the instances of Sara's deceitful conduct under that statute, had Parks advanced his argument prior to trial. And second, as the State acknowledges, even if we were to deem Parks' argument forfeited, we would still need to address the merits of his argument in the context of Parks' ineffective assistance of counsel claim. Under these circumstances, we choose not to apply the forfeiture rule.

¶33     Turning to the merits of Parks' motive argument, we conclude the evidence did not satisfy the first prong of the *Sullivan* analysis. To be sure, Parks has articulated a potentially permissible purpose for introducing the instances of Sara's deceitful conduct—motive. But simply identifying a permissible purpose for introducing other acts evidence is not enough to satisfy the first prong of the *Sullivan* analysis if using the evidence to meet that purpose "depend[s] upon the forbidden inference of character as circumstantial evidence of conduct." *State v. Marinez*, 2011 WI 12, ¶25, 331 Wis. 2d 568, 797 N.W.2d 399.

¶34   Here, the only way the jury could have understood Parks' motive argument would be to infer that because Sara had engaged in prior acts of deceit and dishonesty to obtain money for drugs, she must have been doing so here when she made her allegation of sexual assault.  In other words, the jury would have had to infer that she had a propensity to lie to obtain drug money and that she acted in conformity with that propensity to lie in this case.  Such propensity evidence is not admissible.  *See State v. Barreau*, 2002 WI App 198, ¶40, 257 Wis. 2d 203, 651 N.W.2d 12.

¶35   In arguing to the contrary, Parks primarily relies on *State v. Johnson*, 184 Wis. 2d 324, 516 N.W.2d 463 (Ct. App. 1994).  *Johnson*, however, is materially distinguishable on its facts.  In *Johnson*, the defendant's former live-in girlfriend contended that the defendant assaulted her during an argument. *Id.* at 334.  Based on her allegations, the State charged Johnson with battery and second-degree reckless endangerment while using a dangerous weapon.  *Id.*  At trial, Johnson's theory of defense was that his former girlfriend falsely accused him of assault so that after he was incarcerated, she could misappropriate certain items of his personal property.  *Id.* at 338.  To bolster this theory, Johnson sought to introduce evidence he claimed was probative of his accuser's motive to falsely accuse him—namely, that within days after his arrest, his former girlfriend approached several of the people who were storing property for Johnson and attempted to claim the property as her own.  *Id.*  The circuit court did not admit the evidence, and Johnson was found guilty of battery and second-degree reckless endangerment.  *Id.* at 333.

¶36   On appeal, we reversed the circuit court's decision to not admit this evidence and remanded for a new trial.  *Id.*  In discussing our decision, we

13

explained that the proffered evidence, viewed from the theory of defense, was "directly linked to the criminal events charged against Johnson." *Id.* at 339.

¶37 Conversely, here, there was no direct link between the criminal events charged against Parks and the instances of Sara's deceitful conduct. Instead, again, Parks sought to establish that because Sara had a propensity to fabricate events in the past to obtain drug money, she acted in conformity with that propensity when she accused him of sexually assaulting her.

¶38 Moreover, even if we assumed that Parks satisfied the first (and second) prong of the *Sullivan* analysis, we would conclude that the circuit court properly exercised its discretion by excluding the evidence under the third prong of that analysis. Under that prong, a court has the discretion to exclude evidence if its probative value is substantially outweighed by the danger of unfair prejudice. *Sullivan*, 216 Wis. 2d at 789. Evidence is unfairly prejudicial if it tends to influence the outcome of the case by "improper means." *Id.* at 789-90. When weighing evidence's probative value against the danger of unfair prejudice, a court should consider "the proponent's need to present this evidence given the context of the entire trial." *Marinez*, 331 Wis. 2d 568, ¶41.

¶39 At the postconviction hearing, the circuit court stated that it would have excluded the instances of Sara's deceitful conduct if defense counsel had sought to admit them as other acts evidence. The court explained the evidence would

> have created unfair prejudice. The proposed topics were extrinsic, collateral, dissimilar, and again, prejudicial.
>
>  ….
>
> Mr. Parks had the issue before the jury in a better way, actually, than through this extrinsic evidence. The

14

> admission of [Sara] herself that she had problems with honesty, that she was a liar, that she would take money for drugs, that was in front of the jury, and it doesn't get better than having the person that you're attacking their credibility to admit those things.
>
> The jury had that, and the rest of this is all collateral. The issue was in front of the jury.

¶40    Under our deferential standard of review, we cannot conclude this decision constituted an erroneous exercise of the circuit court's discretion. The court made a rational decision that evidence of the instances of Sara's deceitful conduct could have caused the jury to improperly conclude that simply because she had lied in the past she was lying about Parks' assault. In addition, the court properly noted that Parks' need to present the evidence was diminished by the fact that the jury heard from Sara herself that, due to her drug addiction, "sometimes honesty is hard." As such, we will not disturb the court's discretionary decision.

¶41    Parks next argues the circuit court should have allowed him to cross-examine Sara regarding the instances of her deceitful conduct under WIS. STAT. § 906.08(2). That statute provides:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than a conviction of a crime or an adjudication of delinquency as provided in [WIS. STAT.] s. 906.09, may not be proved by extrinsic evidence. They may, however, subject to [WIS. STAT.] s. 972.11(2), if probative of truthfulness or untruthfulness and not remote in time, be inquired into on cross-examination of the witness or on cross-examination of a witness who testifies to his or her character for truthfulness or untruthfulness.

¶42    Parks asserts the circuit court erred when it denied his motion in limine brought under this statute because the court "seemed to believe … there would need to be testimony on [Sara's] character for truthfulness before

cross-examination … on these instances could occur." The State does not respond to this argument, and we therefore deem the State to have conceded the court erred to the extent it concluded Sara would need to "open the door" in order for Parks to cross-examine her about her instances of deceitful conduct under WIS. STAT. § 906.08(2). *See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979).

¶43    Moreover, beyond any concession on the State's part, a plain reading of the statute allows for cross-examination on specific instances of conduct for the purpose of attacking a witness's credibility when the witness testifies as to his or her "character for truthfulness *or* untruthfulness." WIS. STAT. § 906.08(2) (emphasis added). Thus, we agree with Parks that the circuit court erred to the extent it determined Sara would have to testify to her character for truthfulness before § 906.08(2) was implicated.

¶44    Nevertheless, we agree with the State that the circuit court's error does not require reversal, for two reasons. First, even when evidence of specific instances of conduct might be admissible on cross-examination under WIS. STAT. § 906.08(2), a court must still perform a WIS. STAT. § 904.03 balancing of probative value versus prejudicial effect. *See McClelland v. State*, 84 Wis. 2d 145, 156-57, 267 N.W.2d 843 (1978). As set forth above, the court adequately explained why it believed the prejudicial effect of the instances of Sara's deceitful conduct outweighed their probative value.

¶45     Second, even if the circuit court erred by limiting Parks' cross-examination of Sara, we conclude the error was harmless.[11]  A court's error in limiting cross-examination is subject to a harmless-error analysis.  *See **State v. Rhodes***, 2011 WI 73, ¶32, 336 Wis. 2d 64, 799 N.W.2d 850.  To determine whether an error in limiting cross-examination was harmless, we consider "the importance of the witness's testimony, whether the testimony was cumulative, whether other evidence corroborated or contradicted the witness's testimony, the extent of the cross-examination allowed, and the overall strength of the prosecution's case against the defendant."  ***Id.***, ¶33.

¶46     As we already discussed, the jury heard from Sara herself that, due to her drug addiction, she had a history of lying and stealing to obtain money for drugs.  Thus, evidence detailing the specific instances in which she did so would have been merely cumulative, and therefore any error was harmless.

### B. *Prior sexual assault allegation*

¶47     Parks also argues the circuit court erred by excluding evidence of Sara's prior allegation that her former boyfriend sexually assaulted her.  WISCONSIN STAT. § 972.11, commonly referred to as Wisconsin's rape-shield statute, generally prohibits the introduction of any evidence of the complainant's prior sexual conduct regardless of the purpose.  *See **State v. Ringer***, 2010 WI 69,

---

[11] We note that Parks also briefly argues that, under WIS. STAT. § 906.08(2), he should have been allowed to cross-examine Sara regarding statements she made during an interview with police in October 2014.  In that interview, Sara agreed with a detective that she had spun "lies on top of lies" and that "[t]hat's what happens when you get in too deep with drugs," and that "[y]ou don't even know what anything is anymore."  For the same reason we conclude the circuit court's decision to limit cross-examination regarding the instances of Sara's deceitful was harmless error (i.e., the evidence was cumulative), we conclude any error in connection with Sara's October 2014 statements was also harmless.

¶25, 326 Wis. 2d 351, 785 N.W.2d 448. The statute was enacted to "counteract outdated beliefs that a complainant's sexual past could shed light on the truthfulness of the sexual assault allegations." *Id.*

¶48 The statute's broad prohibition on the introduction of any evidence of a complainant's prior sexual conduct is subject to three exceptions. *See* WIS. STAT. § 972.11(2)(b). The exception relevant here allows for the introduction of evidence of "prior untruthful allegations of sexual assault made by the complaining witness." Sec. 972.11(2)(b)3.

¶49 Before allowing evidence to be introduced under WIS. STAT. § 972.11(2)(b)3., a circuit court must first determine whether the complainant's prior allegation of sexual assault actually fits within that exception. In other words, the court must determine whether the prior allegations were untruthful. *Ringer*, 326 Wis. 2d 351, ¶31. The court itself need not be convinced by a preponderance of the evidence that the allegations were in fact untruthful, but only that a jury, acting reasonably, could make such a finding. *Id.*, ¶32. If the court concludes the proffered evidence fits within § 972.11(2)(b)3., it must also determine whether the evidence is "material to a fact at issue in the case" and is "of sufficient probative value to outweigh its inflammatory and prejudicial nature." WIS. STAT. § 971.31(11); *Ringer*, 326 Wis. 2d 351, ¶27.

¶50 In this case, the circuit court excluded the evidence of Sara's prior sexual assault allegation because it determined Parks had not met his burden to show that a reasonable jury could find that the prior allegation was untruthful. Further, the court determined the probative value of the evidence would not outweigh its inflammatory and prejudicial nature.

¶51 We conclude the circuit court's decision was a proper exercise of its discretion. To begin, the undisputed fact that Sara never recanted her allegation that her former boyfriend had intercourse with her when she was too intoxicated to give consent "weighs against a jury's finding that the allegation[] w[as] untruthful." *See Ringer*, 326 Wis. 2d 351, ¶37. In addition, the fact that the former boyfriend acknowledged he and Sara had sexual intercourse after smoking marijuana—even though he claimed Sara was not too intoxicated to give consent—supports the court's decision that Parks could not prove the allegations were untruthful because a jury could reasonably believe either Sara or the boyfriend's version of events. *See id.*, ¶¶38-39. Finally, although Parks relies heavily on the fact that the officer who investigated Sara's allegation did not believe her, the investigating officer's opinion as to Sara's truthfulness would not have been admissible under *State v. Haseltine*, 120 Wis. 2d 92, 352 N.W.2d 673 (Ct. App. 1984). Under *Haseltine*, "[n]o witness, expert or otherwise, should be permitted to give an opinion that another mentally and physically competent witness is telling the truth." *Id.* at 96.

¶52 In any event, even if Parks had satisfied the first prong for admissibility under WIS. STAT. § 972.11(2)(b)3., the circuit court reasonably determined that the probative value of Sara's prior allegation of sexual assault did not outweigh its inflammatory nature. As our supreme court has explained, when the circumstances surrounding two different sexual assault allegations are "dissimilar," the probative value of the evidence sought to be introduced is "minimal." *State v. DeSantis*, 155 Wis. 2d 774, 791, 456 N.W.2d 600 (1990). This minimal probative value is further diminished when it is disputed whether the allegation was, in fact, untruthful. *Id.* at 792. Moreover, when "cumulative of other evidence attacking the complainant's credibility," the evidence's probative value is even further diminished. *Id.* at 793.

19

¶53    Again, the allegations Sara made against her former boyfriend involved an admitted instance of sexual intercourse, with the only question being whether Sara had been unable to consent due to her intoxicated state. In contrast, here, Sara alleged that she was violently and forcibly sexually assaulted because she was unable to pay a drug debt. We conclude Sara's prior allegation is sufficiently dissimilar to the assault charged that the circuit court properly exercised its discretion by excluding evidence of the prior allegation.

¶54    Given all the above, the circuit court did not erroneously exercise its discretion by excluding the evidence. Instead, the court reasonably avoided "embroil[ing] the trial" in this case with a dispute over whether Sara had been untruthful when she previously alleged she had been too intoxicated to consent to sexual intercourse with her former boyfriend.

**II.  Effect of evidentiary rulings on Parks' constitutional rights**

¶55    In the alternative, Parks contends that "[e]ven if the circuit court properly applied Wisconsin evidentiary law," the court violated his constitutional rights to present a defense, to confront his accuser, and to a fair trial by excluding the evidence of the instances of Sara's deceitful conduct and her prior allegation of sexual assault. When a defendant asserts that a circuit court's evidentiary rulings raise "question[s] of constitutional proportion," the issue before us becomes one of "constitutional fact," which we review de novo. *State v. Dodson*, 219 Wis. 2d 65, 70, 580 N.W.2d 181 (1998).

¶56    A criminal defendant's due process right includes "the right to a fair opportunity to defend against the State's accusations." *State v. Rockette*, 2006 WI App 103, ¶32, 294 Wis. 2d 611, 718 N.W.2d 269. Because the "right to present evidence is rooted in the Confrontation and Compulsory Process Clauses of the

United States and Wisconsin Constitutions[,]" a circuit court may not "deny the defendant a fair trial or the right to present a defense by a mechanistic application of rules of evidence." ***Id.***

¶57 The rights to confront witnesses and to defend are not absolute, however, and "may bow to accommodate other legitimate interests in the criminal trial process." ***Id.***, ¶33. "Evidence of little importance, whether merely cumulative or of little probative value, will almost never outweigh the State interest in efficient judicial process." ***Id.***

¶58 As already explained, evidence of the instances of Sara's deceitful conduct was merely cumulative of her own testimony that she had lied and stolen money in the past as a result of her drug addiction. And Sara's prior allegation that her former boyfriend sexually assaulted her had little probative value due to its dissimilarity with Sara's allegation in this case and the open question of whether the allegation was untruthful. Thus, on this record, we cannot conclude that the circuit court's evidentiary rulings violated Parks' constitutional rights.

¶59 Even assuming Parks' rights were violated, however, we conclude that any error made by the circuit court was harmless. "A constitutional or other error is harmless if it is 'clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.'" ***State v. Harvey***, 2002 WI 93, ¶49, 254 Wis. 2d 442, 647 N.W.2d 189 (citation omitted).

¶60 As we have seen, Parks was able to show through Sara's own testimony that Sara had a drug addiction, which caused her to lie and steal to obtain money for drugs. Parks also introduced testimony from multiple witnesses that Sara had told them she lied about her allegations against Parks. Parks relied on this evidence to argue to the jury that "[t]here's a motive for [Sara] to make this

21

up. She needed money to buy drugs. She told people that this happened, and she received money to buy drugs." Because Parks presented the jury with the very defense he claims he was prevented from raising, we are satisfied beyond a reasonable doubt that a rational jury would have convicted him had it heard the evidence he faults the circuit court for excluding.

### III.  Ineffective assistance of counsel

¶61    Parks asserts his trial counsel provided him with ineffective assistance in two respects. Namely, Parks faults his counsel for failing to argue: (1) motive as a permissible purpose for the introduction of the instances of Sara's deceitful conduct under WIS. STAT. § 904.04(2); and (2) that the State "opened the door" for Parks to cross-examine Sara about the instances of her deceitful conduct.

¶62    To prevail on an ineffective assistance claim, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). As such, we need not address both prongs when a defendant fails to make a sufficient showing on one. *Id.* at 697. When reviewing an ineffective assistance claim, we will uphold the circuit court's findings of fact unless they are clearly erroneous, but whether the facts are sufficient to establish ineffective assistance is a question of law that we review independently. *State v. Nielsen*, 2001 WI App 192, ¶14, 247 Wis. 2d 466, 634 N.W.2d 325.

¶63    To demonstrate deficient performance, a defendant must show that, under the totality of the circumstances, his or her trial counsel's representation fell below an objective standard of reasonableness. *State v. Dillard*, 2014 WI 123, ¶88, 358 Wis. 2d 543, 859 N.W.2d 44. There is a strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance. *State v. Breitzman*, 2017 WI 100, ¶65, 378 Wis. 2d 431, 904 N.W.2d 93. "An attorney does not perform deficiently by failing to make a losing argument." *State v. Jacobsen*, 2014 WI App 13, ¶49, 352 Wis. 2d 409, 842 N.W.2d 365.

¶64 In regard to Parks' first claim of ineffective assistance, we have already rejected his argument that the instances of Sara's deceitful conduct would have been admissible if trial counsel had advanced a "motive" argument under WIS. STAT. § 904.04(2). Accordingly, counsel did not perform deficiently by failing to make this "losing argument" prior to trial. *See Jacobsen*, 352 Wis. 2d 409, ¶49.

¶65 Parks' second claim rests on the assertion that the State opened the door for Parks to introduce evidence of the instances of Sara's deceitful conduct through the following line of questioning during Sara's direct examination:

> Q And is everything you're telling us here today the truth?
>
> A Yes.
>
> Q And you never—I guess I use the word used. You never used—you never made up a story just so you could get money from your dad?
>
> A No.

¶66 Under the curative admissibility doctrine, commonly referred to as "opening the door," when a "party accidentally or purposefully takes advantage of a piece of evidence that is otherwise inadmissible," the circuit court may "allow the opposing party to introduce otherwise inadmissible evidence if it is required by the concept of fundamental fairness to cure some unfair prejudice." *State v. Dunlap*, 2002 WI 19, ¶32, 250 Wis. 2d 466, 640 N.W.2d 112. The doctrine,

however, allows only for the introduction of "similar evidence" to counter the original evidence that opened the door. ***Pruss v. Strube***, 37 Wis. 2d 539, 544, 155 N.W.2d 650 (1968).

¶67    We agree with Parks that Sara's testimony denying she ever "made up a story" to get money from her dad opened the door to questioning about any instances in which she had, in fact, made up a story to get money from her dad. We disagree, however, that any of the instances of her deceitful conduct involved her "making up a story" to get money from her father. Instead, those instances involved her either stealing credit cards and checks or forging checks. As such, they do not constitute similar evidence. *See **id.***

¶68    As Parks notes in his reply brief, Sara did lie to police about having stolen checks from her father. But Sara's lying to cover up her actions, after the fact, is not similar to having "made up a story" to steal the checks in the first instance. Thus, there was no "unfair prejudice" for Parks to cure because Sara did not deny doing something she had, in fact, done. Indeed, as discussed at length, Sara frankly admitted to the jury that she had lied and stolen money in the past as a result of her drug addiction. Consequently, we determine that Parks' attorney's performance was not deficient.

¶69    In addition, even assuming Parks' trial counsel performed deficiently by not arguing the State opened the door for the introduction of the instances of Sara's deceitful conduct, Parks cannot show he was prejudiced by this assumed deficiency. To demonstrate prejudice in the context of an ineffective assistance of counsel claim, the defendant must show there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

¶70 Once again, the jury heard ample evidence calling into question Sara's credibility. Parks' pointing to further evidence which "might have incrementally weakened" Sara's credibility further does not undermine our confidence in the jury's verdict. *See State v. Trawitzki*, 2001 WI 77, ¶44, 244 Wis. 2d 523, 628 N.W.2d 801.

## IV. New trial in the interest of justice

¶71 Finally, Parks argues that he is entitled to a new trial in the interest of justice. This court may grant a new trial in the interest of justice under WIS. STAT. § 752.35 if it "appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried." Such reversals are rare and are reserved for exceptional cases. *State v. Kucharski*, 2015 WI 64, ¶41, 363 Wis. 2d 658, 866 N.W.2d 697.

¶72 We are not persuaded that this is one of the rare and exceptional cases that calls for us to grant a new trial in the interest of justice. Parks contends "the jury did not get to hear important and crucial evidence, which unfairly weighted the trial in the [S]tate's favor and prevented the real controversy—the credibility dispute between Mr. Parks and [Sara]—from being fairly and fully tried."

¶73 Contrary to Parks' assertion, we conclude the real controversy was fully and fairly tried. The jury heard Sara testify about a violent sexual assault she alleged Parks and another man committed against her. The jury also heard from both Sara herself and other witnesses that Sara had a history of lying and stealing

to obtain money for drugs, and that she had told multiple individuals that she had fabricated the events she described in her testimony. The jury also heard Parks testify that he did not assault Sara. Presented with this evidence, the jury chose to believe Sara's testimony that she was, in fact, assaulted. We will not disturb the jury's decision.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.